## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA
## PHILADELPHIA DIVISION

| | | |
|---|---|---|
| LISA MATARAZZO, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | 2:11-cv-05439-JD |
| | : | |
| EQUIFAX INFORMATION | : | |
| SERVICES LLC, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S
## MOTION TO TRANSFER, OR ALTERNATIVELY,
## TO DISMISS FOR FAILURE TO STATE A CLAIM

EIS submits this memorandum of law in support of its Motion to Transfer Venue to the United States District Court for the Northern District of Georgia, Atlanta Division, or, alternatively, to Dismiss for Failure to State a Claim. As detailed below, the case should be transferred given the lack of connection of the alleged events to this District; alternatively, Plaintiff's amended complaint ("Complaint") should be dismissed under Rule 12(b).

## INTRODUCTION

Plaintiff filed this putative nationwide class action against EIS under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, in this Court

notwithstanding the facts that (1) she does not reside in Pennsylvania, (2) she does not allege that she had any contact with EIS in Pennsylvania, and (3) EIS is headquartered in Atlanta, Georgia, where all of its actions related to Plaintiff's dispute, and those of the putative class members, occurred.  This Court has held in numerous cases involving similar and, indeed, almost identical circumstances that transfer to the defendant's place of business will best serve the convenience of the parties and witnesses, and the interests of justice, particularly where, as there, the plaintiff pursues a nationwide class action.  There is no reason to deviate from those decisions here, especially given Plaintiff's admission that the "total focus" of this case will be on EIS's allegedly "uniform conduct."  (Doc. 5 ¶ 28.)

In the alternative, Plaintiff's claims against EIS, which allege only a willful violation of the FCRA, should be dismissed under Rule 12(b)(6).  Plaintiff's vague allegations regarding willfulness fail to satisfy the pleading requirements established by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Accordingly, the Complaint should be dismissed.

**RELEVANT FACTUAL BACKGROUND**

## I.	PLAINTIFF'S COMPLAINT AND OUT--OF-STATE RESIDENCE

Plaintiff alleges that EIS violated FCRA § 1681k(a)(1) by failing to provide her and the putative class members with "timely and lawful notice that it was

furnishing an employment consumer report 'at the time' it did so, even though those reports contained public records information that was likely to have an adverse effect upon the consumers' ability to obtain employment." (Doc. 5 ¶ 3.)[1] She seeks only statutory and punitive damages on behalf of herself and putative class members. (*See* Doc. 5 ¶ 29.) According to Plaintiff, "[w]ithout limitation, the total focus of the litigation will be Defendant's uniform conduct and procedures, whether Defendant sent the required notices, when it did so and whether Defendant acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices." (*Id.* ¶ 28.)

Plaintiff's Complaint does not identify her state of residence, and does not suggest that she does any business in, or has any personal connection to, Pennsylvania. (*See* Doc. 5 ¶ 6.) In fact, according to records maintained by EIS, Plaintiff resides in Sewell, New Jersey. (Banks Decl. ¶¶ 17-18.)

## II.   THE "TOTAL FOCUS OF THE LITIGATION" WILL BE GEORGIA.

If Plaintiff is correct that the "total focus" of this case will be EIS's

---

[1] Section 1681k states: "A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—(1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported . . .; or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." 15 U.S.C. § 1681k(a).

"conduct and procedures," whether it "sent the required notices, when it did so and whether [it] acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices," then it is clear that the case should be transferred to Georgia. EIS is a Georgia limited liability company with its principal place of business in Atlanta, Georgia, where its headquarters and Consumer Center are located. (Banks Decl. ¶ 7.) EIS maintains its consumer database in Atlanta, where it also investigates consumer disputes and prepares credit reports for its customers. (*Id*. ¶¶ 9-10, 19.)

Moreover, EIS's policies and procedures related to the consumer notifications required by FCRA § 1681k(a)(1), which are the undisputed focus of this lawsuit, were developed and implemented by EIS in Atlanta. (*Id*. ¶ 13.). All of EIS's witnesses and documents associated with its policies and procedures, as well as with Plaintiff's individual case, are also located in Atlanta. (*Id*. ¶ 14.)

EIS does not maintain a consumer database, or an office related to consumer affairs, in Pennsylvania. (*Id*. ¶ 15.) No representatives of EIS had any communications with Plaintiff, or her potential employers, by telephone, U.S. mail, electronic mail, or any other means in Pennsylvania, and EIS knows of no material witnesses with knowledge of the allegations in the complaint that reside and/or work in Pennsylvania. (*Id*. ¶ 16.)

## ARGUMENT

### I.   THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF GEORGIA, THE SITUS OF MATERIAL EVENTS AND "THE FOCUS OF THE LITIGATION."

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  Its purpose "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001) (internal quotations omitted); *accord Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 658 (E.D. Pa. 2002).  These goals will be furthered by transfer of this case to the Northern District of Georgia, Atlanta Division.

### A.   Venue Is Proper In The Transferee Court.

As a threshold matter, this Court must determine whether the proposed transferee district has proper jurisdiction and venue.  *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *Weber*, 155 F. Supp. 2d at 284. Indisputably, Plaintiff could have brought this action in the Northern District of

Georgia.  *See* 28 U.S.C. § 1391(b).  EIS is headquartered in Atlanta, where all of its actions with respect to this lawsuit occurred and where the policies at issue in this case were developed and implemented.  Accordingly, the threshold question of venue in the transferee court is satisfied.

### B. The Applicable Factors Strongly Favor Transfer To The Northern District Of Georgia, Atlanta Division.

### 1. The Court Must Strike A Balance Among Relevant Factors.

It is well-settled that the convenience of the parties, the convenience of the witnesses, and the interests of justice should be considered when deciding whether to grant a motion to transfer.  *See*, *e.g.*, *Van Dusen*, 376 U.S. at 616; *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  Courts, however, "have not limited their consideration to the three enumerated factors in § 1404(a)." *Jumara*, 55 F.3d at 879.  All relevant factors should be considered "to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  *Id.* (internal quotations omitted). Factors often identified by courts include:

> (1) the convenience and preference of the parties, including plaintiff's choice of forum; (2) the convenience of witnesses; (3) access to sources of proof such as books and records; (4) practical considerations that make litigation easy, expeditious or inexpensive; (5) the relative calendar congestion of the two competing districts; (6) where the events at issue took place and the interest of the respective courts in deciding local controversies; (7) the enforceability of any judgment and (8) the familiarity of the trial judge with the applicable law.

*Weber*, 155 F. Supp. 2d at 285 (citing *Jumara*, 55 F.3d at 879-80).

EIS is not required "to show truly compelling circumstances for change of venue, but rather that all relevant things considered, the case would be better off transferred to another district." *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (quotations, ellipses, and brackets omitted). The Court must strike a balance "among the most important factors in [this] particular case to determine whether transfer is appropriate." *In re United States*, 273 F.3d at 388 (quoting *Shutte*, 431 F.2d at 25). Here, virtually all of the pertinent factors weigh strongly in favor of transferring venue to the Northern District of Georgia.

> ### 2. The Non-Resident Plaintiff's Choice Of A Pennsylvania Forum Is Not Entitled To Any Weight.

Plaintiff's choice of forum is not entitled to any weight for at least three independent reasons:  (1) Plaintiff is not a resident of Pennsylvania; (2) the venue chosen by a plaintiff proposing a nationwide class action is not entitled to deference; and (3) Georgia is the situs of material events.

> #### (a) Plaintiff Does Not Reside In The Forum State.

As this Court frequently has recognized, "when the plaintiff is not a resident of the chosen forum, he must make a strong showing of convenience in order for his choice to be given deference." *Bogollagama v. Equifax Info. Servs. LLC*, No. 09-cv-1201, 2009 WL 4257910, *2 (E.D. Pa. Nov. 30, 2009) (transferring case against EIS to the Northern District of Georgia) (quotations omitted); *see also*

*Smith v. HireRight Solutions, Inc*, Civ. No. 09-cv-6007, 2010 WL 2270541, *3 (E.D. Pa. June 7, 2010) (citing cases); *Saint-Gobain Calmar*, 230 F. Supp. 2d at 659.  "When the home forum has been chosen, it is reasonable to assume that this choice is convenient.  When the plaintiff is foreign, however, this assumption is much less reasonable." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *see also Windt v. Qwest Commc'ns Intern., Inc.*, 529 F.3d 183, 190 (3d Cir. 2008) (discussing *forum non conveniens*); *Bogollagama*, 2009 WL 4257910, *2.

Here, Plaintiff cannot make any showing of convenience, let alone the required "strong showing of convenience," to justify retaining venue in this Court. She does not reside in Pennsylvania and does not allege that any actions pertinent to this lawsuit occurred in Pennsylvania.   In *Bogollagama*, Judge Padova transferred a case against EIS to the Northern District of Georgia under circumstances almost identical to those present here.  *See* 2009 WL 4257910, **3-6. EIS had no contact with the plaintiff in Pennsylvania, none of EIS's documents or witnesses were located in Pennsylvania, and the events giving rise to the plaintiff's claims arose in Atlanta, "where Equifax's Consumer Center and consumer reporting database are located." *Id*.  As in *Bogollagama*, "keeping this case for trial in this district would establish oppressiveness and vexation to Equifax 'out of all proportion to plaintiff's convenience'" and would not serve the interests of justice. *Id*., *6 (quoting *Windt*, 529 F.3d at 192).

**(b)    By Pursuing A Nationwide Class Action, Plaintiff's Choice Of Forum Is Entitled To Little Or No Weight.**

The weight accorded Plaintiff's choice of forum is further eroded where, as here, she is pursuing a nationwide class and, therefore, is suing in a representative capacity. "It has been consistently held . . . that the weight accorded to plaintiff's choice of forum is considerably reduced in class and derivative actions, where each of many potential plaintiffs may claim the right to have the action heard in his home forum, and where the nominal plaintiff's role in the litigation is likely to be quite minimal." *Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312, 1313-14 (E.D. Pa. 1982) (citing cases) (transferring proposed class action to district where corporate defendant was headquartered); *see also Smith*, 2010 WL 2270541, *3 (collecting numerous cases from this Court); *Howell v. Shaw Indus.*, Nos. 93-cv-2068 & 93-cv-2638, 1993 WL 387901, *3 (E.D. Pa. Oct. 1, 1993) (transferring class action against Georgia-based corporations to Northern District of Georgia).

As the Court recently held in *Smith*, "where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the [plaintiff's] cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Smith*, 2010 WL 2270541, *3 (quoting *Koster v. Lumbermens Mut. Cas. Co*., 330 U.S. 518, 524 (1947)). This is especially so where as here, Plaintiff does not even reside in the

chosen forum and "the Complaint does not set forth a claim for individual compensatory damages," meaning that "the precise effects of Defendant's actions on the class members have no bearing on the case." *Id.*, *5.

The Court's ruling in *Smith* is indistinguishable and compels transfer here. Indeed, that case, like this one, (1) involved a claim under § 1681k of the FCRA; (2) sought nationwide class status; and (3) sought only statutory damages for the class. In fact, the only real difference between *Smith* and this case was that the plaintiff in *Smith* – unlike Plaintiff here – actually resided in Pennsylvania. *See* 2010 WL 2270541, **1, 4, 6. Notwithstanding the plaintiff's in-state residence, the Court granted the defendant's motion to transfer, noting, among other things, that none of the elements of a § 1681k claim require the plaintiff's "active participation or testimony," especially where the plaintiff sought "only statutory damages and not individual damages about which he need testify." *Id.*, *6.

In *Howell*, the plaintiffs (some of whom, unlike Plaintiff here, resided in Pennsylvania) alleged Lanham Act violations against several Georgia companies. *See* 1993 WL 387901, **1-2. Judge Yohn observed that, "[i]n a class action, such as this, the testimony offered by the plaintiff is likely to be minimal. . . . The critical evidence, both testimonial and documentary to sustain the claims of the complaint must come from other sources, particularly from documents within the defendants' control." *Id.*, *5; *see also Klingensmith v. Paradise Shops, Inc.*, No.

07-cv-322, 2007, WL 2071677, *2 (W.D. Pa. July 17, 2007) (transferring FCRA class action to Georgia, despite the plaintiffs' expressed preference for litigating in Pennsylvania, where there was "no indication that [the plaintiffs'] role [would] be anything more than nominal in nature" and "[t]he focus of the litigation [was] on [the defendant's] actions, not on any class members' actions"); *Prof. Adjusting Sys. of Am. v. Gen. Adjustment Bureau, Inc.*, 352 F. Supp. 648, 650 (E.D. Pa. 1972) ("[B]ecause of the great number of persons with equal rights as plaintiffs, and the large number of districts in which venue exists under the venue statutes, the weight accorded to Plaintiffs' choice of forum is to be reduced in class actions, especially in class actions of a national nature, that is, where the plaintiff class is scattered broadly throughout the country.") (transferring proposed nationwide class).

As Plaintiff herself has asserted, "the total focus of the litigation will be Defendant's uniform conduct and procedures, whether Defendant sent the required notices, when it did so and whether Defendant acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices." Doc. 5 ¶ 28. For four decades, this Court has transferred proposed nationwide class actions to the forum where the alleged "uniform conduct and procedures" occurred and were formulated, even where (unlike here) the named plaintiff resided in Pennsylvania. These consistent rulings should be followed here and compel the transfer of this case to the Northern District of Georgia.

**(c)     The "Situs Of Material Events" Is In Atlanta.**

The weight of a plaintiff's chosen forum is still further eroded where, as here, it is not "the situs of material events." *Smith*, 2010 WL 2270541, *4; *see also High River Ltd P'ship v. Mylan Lab.*, *Inc.*, 353 F. Supp. 2d 487, 498-99 (M.D. Pa. 2005); *Saint-Gobain Calmar*, 230 F. Supp. 2d at 659; *Nat'l Paintball Supply, Inc. v. Cossio,* 996 F. Supp. 459, 462 (E.D. Pa. 1998).   That is particularly true in FCRA cases, as the Court in *Smith* held in transferring that case: "Multiple courts considering § 1404 transfer motions in FCRA cases have noted that the situs of material events, and thus the appropriate venue, is generally the place where the defendant credit reporting agency conducted its business."   *Smith*, 2010 WL 2270541, *4 (collecting cases).   Indeed, whenever "the plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred."   *Ayling v. Travelers Prop Cas. Corp.*, No. 99-cv-3243, 1999 WL 994403, *5 (E.D. Pa. Oct. 28, 1999).

Here, it cannot be disputed that Atlanta – where EIS developed and implemented the challenged § 1681k policies – is the situs of material events. Indeed, Plaintiff admits that "the total focus of the litigation will be Defendant's uniform conduct and procedures, whether Defendant sent the required notices, when it did so and whether Defendant acted willfully in its failure to design and

implement procedures to assure compliant delivery and/or timing of these notices."

Doc. 5 ¶ 28.  This undisputed fact further supports transfer.

      **3.**      **Transfer To The Northern District Of Georgia Will Enhance EIS's Convenience And The Convenience Of The Witnesses.**

Given that the focus of this case, as Plaintiff states, is EIS's "uniform conduct and procedures," it is not surprising that transfer of this case will enhance the convenience of EIS and its witnesses.  "There is no question that the availability and convenience of witnesses and parties is an important consideration, perhaps the paramount consideration, in determining the desirability or necessity of a transfer."  *Bolton*, 549 F. Supp. at 1315 (transferring proposed class action to Texas, where corporate defendant resided, as it was the location of corporate records and potential witnesses).

Plaintiff's Complaint fails to identify a single document or witness relevant to this lawsuit that can be found in Pennsylvania.  On the other hand, it is undisputed that EIS maintains its consumer credit files and related documents in Atlanta, that it issues notices to consumers regarding negative public-record information from Atlanta, and that its policies related to those notices are developed and implemented in Atlanta.  *See* Banks Decl. ¶¶ 9-10, 13, 19.  In short, all of EIS's documents related to issuance of § 1681k notices and all of EIS's witnesses capable of testifying regarding its policies and procedures with respect to § 1681k are located in Atlanta.  *Id*. ¶¶ 14, 24-25.  Transfer to Atlanta would

enhance both parties' access to this evidence during trial and would greatly enhance the convenience of the witnesses themselves. *See Saint-Gobain Calmar*, 230 F. Supp. 2d at 661 (transferring case to South Carolina, where the defendant was located and the facts could "be more easily developed," "[c]onsidering that there [were] no records or witnesses in Pennsylvania"); *High River*, 353 F. Supp. 2d at 498 (transferring case to district where "many of the relevant documents were prepared").

As discussed above, transfer of this case to Atlanta would impose little, if any, inconvenience on Plaintiff, who is but one of a proposed nationwide class and who does not seek actual damages.  On the other hand, transfer would greatly increase the convenience of EIS and its witnesses, and would also enhance Plaintiff's convenience as she will need many of the same witnesses to prove her case.  "When a transfer motion would aid the movant and not disadvantage the opponent, transfer is appropriate." *Saint-Gobain Calmar,* 230 F. Supp. 2d at 661. Consequently, witness convenience weighs heavily in favor of transferring this case to the Northern District of Georgia.

### 4.    The Public-Interest Factors Strongly Favor Transfer.

As this Court has held, there is a public interest in making the trial of a case "easy, expeditious and inexpensive." *Saint-Gobain Calmar*, 230 F. Supp. 2d at 659 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).  For reasons

already discussed, it is self evident that transfer of this case to Georgia would result in a more efficient and less expensive trial.

Consideration should also be given to the relative interests of the respective jurisdictions in the dispute. *See*, *e.g.*, *Weber*, 155 F. Supp. 2d at 285; *Bogollogama*, 2009 WL 4257910, *6 (citing *Windt*, 529 F.3d at 193). The undisputed facts demonstrate that this is not a Pennsylvania controversy: Plaintiff is not a resident of Pennsylvania; EIS is headquartered in Atlanta and does not maintain its consumer database or an office of consumer affairs in Pennsylvania; and no witnesses or relevant documents are located in Pennsylvania. In short, Pennsylvania has no interest in this dispute that is any greater than the interest of other states where members of the putative may reside.

On the other hand, Georgia's interest in the dispute is strong. EIS is incorporated and headquartered in Georgia, and all of EIS's actions related to Plaintiff and other members of the putative class were undertaken there. EIS's consumer database is located in the Northern District of Georgia; its Consumer Center, which handles consumer disputes and other consumer-related matters, is located in the Northern District of Georgia; its policies and procedures are established and maintained in the Northern District of Georgia; it issues credit reports to potential creditors from the Northern District of Georgia; and all of its documents and witnesses pertinent to this dispute are located in the Northern

District of Georgia.    Banks Decl. ¶¶ 9, 11-14, 24.    Indisputably, this is a

controversy in which Georgia has a strong interest.  *See Bogollagama*, 2009 WL

4257910, *5 (holding, under similar circumstances, that Georgia, unlike

Pennsylvania, "has an interest in having this localized controversy decided in

Georgia"); *Howell*, 1993 WL 387901, *8 (holding that Georgia had "a much

stronger interest" in the case than Pennsylvania and that the localized-controversy

factor "strongly favor[ed]" transfer to the Northern District of Georgia).

Consequently, EIS's Motion to Transfer should be granted.

## II.    ALTERNATIVELY, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff alleges that EIS willfully violated § 1681k of the FCRA.  *See* Doc.

5 ¶¶ 29, 32-33.  Willful misconduct under the FCRA encompasses both intentional

and reckless violations of the law.  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-

69 (2007).    Recklessness is "conduct violating an objective standard: action

entailing 'an unjustifiably high risk of harm that is either known or so obvious that

it should be known.'"  *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511

U.S. 825, 836 (1994)).  Here, the allegations in Plaintiff's Complaint are not

sufficient to support the claimed willful violation of the FCRA.

### A.    The Supreme Court's Decisions In *Iqbal* and *Twombley* Have Heightened Pleading Standards For Plaintiffs.

To survive a motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (citations and quotation marks omitted).

Although detailed factual allegations are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  Under *Iqbal* and *Twombly*, "all civil complaints must contain 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. . . .

> Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  129 S. Ct. at 1950.  In other words, *a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts*.

*Fowler*, 578 F.3d at 210-11 (emphasis added).  Plaintiff's complaint here falls short of the required standards.

### B.    Plaintiff's Allegations Do Not Satisfy *Twombley* and *Iqbal*.

### 1.    The "Information And Belief" Allegations Do Not Suffice.

Plaintiff states her allegations at the outset of her complaint as follows: "Plaintiff alleges a class claim under 15 U.S.C. § 1681k because Defendant did not provide Plaintiff and other similarly situated consumers timely and lawful notice that it was furnishing an employment consumer report 'at the time' it did so, even though those reports contained public records information that was likely to have an adverse effect upon the consumers' ability to obtain employment."  Doc. 5 ¶ 3. Thus, she defines the classes as all persons "in the United States" who were the subject of an EIS consumer report furnished for an employment purpose that contained "at least one record of a civil tax lien, bankruptcy or civil judgment" to whom EIS failed to mail "on the day the report was furnished, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report."  Doc. 5 ¶¶ 25, 26.

18

Having centered the case on the alleged untimeliness of Equifax's compliance with § 1681k, Plaintiff then makes the critical factual allegation as follows: "*Upon information and belief*, the Plaintiff alleges that Defendant never sent such a notice letter 'at the time' it furnished an employment consumer report containing derogatory pubic record information about her." Doc. 5 ¶ 13 (emphasis added). That does not pass muster under *Twombley* and *Iqbal*.

Post-*Iqbal*/*Twombley*, courts generally dismiss complaints where the central allegations are made "on information in belief." Thus, in *Canterbury v. J.P. Morgan Mortg. Acquisition Corp.*, 2010 WL 5314543, *6 (W.D. Va. Dec. 20, 2010), the court granted the motion to dismiss where the plaintiff's "central claim" against the defendant was "conclusory" and thus was "not entitled to deference under *Iqbal* and *Twombley*." Likewise, in *Skillstorm, Inc. v. Electronic Data Systems, LLC*, 666 F. Supp. 2d 610, 619 (E.D. Va. 2009), where the plaintiff alleged a defamation claim "[o]n information and belief," the court held that the "pleading of [the] defamation claim is exactly the type of pleading that *Iqbal* and *Twombley* sought to foreclose," and dismissed that claim.

Here, Plaintiff's barebones pleading of her central allegation of EIS's untimely compliance with § 1681k does not suffice. That is too thin a reed on which to base a proposed nationwide class action. The Complaint should be dismissed as a result.

> **2.      The Allegation That Plaintiff's Employer Received A Report From EIS Containing Public Record Information Is Inadequate.**

Section 1681k applies only  to "a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers *which are matters of public record* and are likely to have an adverse effect upon a consumer's ability to obtain employment."   15 U.S.C. § 1681k(a) (emphasis added).  The only allegation in the Complaint that would tie § 1681k to this case is the vague allegation that EIS supposedly reported "a Bankruptcy" of Plaintiff in 2009.  Doc. 5 ¶ 9.  There is no identification of when the alleged bankruptcy appeared on her file, the circumstances surrounding the bankruptcy, or anything else regarding it.  In contrast, Paragraph 15 alleges a number of purported "inaccuracies" that supposedly appeared on Plaintiff's credit file "in October 2009" (*id.* ¶ 15), and identifies the items at issue and why they are allegedly inaccurate.  Those items, of course, are not subject to § 1681k because they are not public records and thus cannot form the basis for liability against EIS in this case.

Plaintiff's failure to supply any factual detail concerning the only alleged public record that would even trigger EIS's § 1681k obligations violates *Twombley* and *Iqbal*.  The Complaint should be dismissed on this independent basis.

> **3.      The Willfulness Allegations Are Infirm.**

Furthermore, the allegations are deficient to allow the willfulness claim to

proceed.   Nothing in the Complaint alleges that Equifax should have been on notice that its procedures for complying with § 1681k even negligently violated the FCRA, let alone willfully violated that statute.   Paragraph 19 references three other cases, but none of them (as implicitly conceded by Plaintiff) involved § 1681k, and in none of them did the courts ever hold that Equifax had violated any provision of the FCRA.   EIS's alleged knowledge of three prior lawsuits alleging violations of other provisions of the FCRA could not possibly supply a basis for a willfulness claim under § 1681k.

Moreover, there is no allegation that any court has ever held that EIS has violated § 1681k in any capacity such that it would be on notice that its procedures as applied to this Plaintiff might willfully violate the statute.   Without such judicial guidance, the willfulness allegations fail.   *See Safeco*, 551 U.S. at 70 (willfulness claim failed where, among other things, the defendant had not had "the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took"); *Long v. Tommy Hilfiger U.S.A., Inc.*, __ F.3d __, 2012 WL 180874, *5 (3d Cir. Jan. 24, 2012) (no willful FCRA violation as a matter of law where "there was no guidance from the federal courts of appeal on this issue"; dismissal of class complaint affirmed).

Finally, the class definitions suggest that Plaintiff seeks to impose a same-day requirement on EIS to send notices to consumers.   Plaintiff proposes

determining class membership based, in part, on whether EIS mailed a § 1681k(a)(1) notice "on the day the report was furnished" to the employer.  Doc. 5 ¶¶ 25, 26.  In other words, Plaintiff evidently contends that the phrase "at the time" in § 1681k(a)(1) means "on the same day."  There is no allegation that an appellate court has interpreted § 1681k in such a manner that a consumer reporting agency willfully violates § 1681k if it does not provide consumer notices within a day.

The Third Circuit's opinion just last week in *Long* is instructive – and controlling.  There, the court affirmed the dismissal of the complaint, which like Plaintiff's complaint here sought relief only for willful FCRA violations, in part because "there was no guidance from the federal courts of appeal on this issue." *Long*, __ F.3d at __, 2012 WL 180874, *5.  Here, in the absence of any appellate authority interpreting the phrase "at the time" in § 1681k, Plaintiff should not be permitted to propose a nationwide class action against EIS.  *Cf. Schweitzer v. Equifax Info. Solutions LLC*, 441 Fed. Appx. 896, 904 (3d Cir. 2011) (affirming summary judgment for EIS on § 1681k claim).

## CONCLUSION

For the reasons discussed, EIS's Motion to Transfer Venue should be granted and this case transferred to the United States District Court for the Northern District of Georgia, Atlanta Division.  In the alternative, the Complaint should be dismissed for failure to state a claim.

Dated: January 31, 2012.

EQUIFAX INFORMATION SERVICES LLP

By:   /s/ Barry Goheen
      Barry Goheen (admitted *pro hac vice*)
      King & Spalding LLP
      1180 Peachtree Street
      Atlanta, GA 30309
      404-572-4618
      Email: bgoheen@kslaw.com

      Catherine Olanich Raymond
      Christie Pabarue Mortensen & Young P.C.
      1880 JFK Blvd., 10th Floor
      Philadelphia, PA  19103
      215-587-1600
      Fax: 215-587-1699
      Email: coraymond@cpmy.com

Of Counsel:
J. Anthony Love, Esq.
K. Ann Broussard, Esq.
King & Spalding LLP
1180 Peachtree Street N.E.
Atlanta, GA  30309-3521
(404) 572-4600

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such to all attorneys of record.

Dated: January 31, 2012.

_____/s/ Barry Goheen_____
Barry Goheen
